# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DA-QUANE ADAMS,<br>    *Plaintiff*, | : <br> : <br> : | |
| v. | : | No. 3:19-cv-280 (KAD) |
| STATE OF CONNECTICUT, et al.<br>    *Defendants*. | : <br> : <br> : | March 13, 2019 |

## INITIAL REVIEW ORDER

On February 26, 2019, the Plaintiff, Da-Quane Adams, a prisoner currently confined at the MacDougall-Walker Correctional Institution ("MWCI") in Suffield, Connecticut, brought a civil action *pro se* under 42 U.S.C. § 1983 against the State of Connecticut[1] and three Connecticut Department of Correction ("DOC") medical officials: Dr. Omprakash Pillai, Dr. Syed Naqvi, and Nurse Shanya G. Compl. (DE#1). The Plaintiff seeks damages and injunctive relief against the Defendants for violating his Eighth Amendment protection against cruel and unusual punishment. *Id.* at p.16. On March 6, 2019, Magistrate Judge William I. Garfinkel granted the Plaintiff's motion to proceed *in forma pauperis*. *See* Order No. 6. For the following reasons, his complaint is dismissed without prejudice.

**Standard of Review**

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a Defendant

---

[1] The Plaintiff cannot recover damages against the state or state officials in their official capacities under § 1983. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the Defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. Notwithstanding, "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

**Allegations**

On February 25, 2014, the Plaintiff was suffering from extreme knee pain. Compl. ¶ 3. He alerted the correction officers in his unit, one of whom called the medical unit for assistance. *Id.* The official in the medical unit informed the Plaintiff that he had to submit a written request to be evaluated by medical personnel. *Id.* Because the Plaintiff was suffering from extreme pain, he asked two other inmates to transport him via wheelchair to the unit phone so that he could make an emergency call to his family. *Id.* After speaking to his family, one of his relatives called the facility to request emergency medical attention for the Plaintiff. *Id.* Medical staff then evaluated the Plaintiff, determined that the pain and swelling in his knee was severe, and transported him to the UConn Health Center for treatment. *Id.* at ¶ 4.

While at the UConn Health Center, doctors diagnosed the Plaintiff with a swollen left knee and noted a prior diagnosis of septic arthritis as shown by a previous x-ray conducted at MWCI. Compl. ¶ 5. The Plaintiff informed the doctor at UConn that his pain was unbearable and requested an MRI of his knee because an x-ray does not show the nature of the problem. *Id.* at ¶¶ 5-6. The doctors at UConn gave the Plaintiff wooden crutches, an ace wrap for his knee, and Motrin for his pain. *Id.* at ¶ 6.

The next day, the Utilization Review Committee ("URC") reviewed a request submitted by Dr. Naqvi regarding the Plaintiff's condition. Compl. ¶ 7. Dr. Naqvi had diagnosed the Plaintiff with arthritis. *Id.* A second review on March 7, 2014 determined that the Plaintiff should continue to see an orthopedist for the "musculoskeletal issue" in his knee. *Id.* at ¶ 9. The URC's report indicated that the Plaintiff was suffering from medial joint-line pain in his knee, but there was no orthopedist follow-up scheduled. *Id.* at ¶¶ 9-10. The x-rays referenced in the report showed no significant bone or soft tissue abnormalities. *Id.* at ¶ 10. The URC did not comment on whether an MRI was needed. *Id.* at ¶¶ 9-10.

On June 13, 2014, the Plaintiff was again evaluated by UConn medical personnel. Compl. ¶ 11. The report generated from that appointment explained that the Plaintiff had medial-sided left knee pain caused by a motor vehicle accident in 2012 and a basketball injury in October 2013. *Id.* The Plaintiff had informed the medical unit that the motor vehicle accident in 2012 was the source of his knee injury. *Id.* at ¶ 12. The report also referenced x-rays which showed no fractures or dislocations in the Plaintiff's knee. *Id.* at ¶ 11. Medical officials continually referred the Plaintiff for x-rays even though the

Plaintiff insisted that he needed an MRI. *Id.* at ¶ 12. That same day, plans were made for an MRI to be conducted on the Plaintiff's left knee. *Id.* at ¶ 13.

On July 10, 2014, a patient information form was completed in preparation for the plaintiff's MRI. Compl. ¶ 14. Before the MRI, the Plaintiff's medical records showed inter-medial joint line pain in his left knee and intermittent symptoms of swelling, pain, and fever. *Id.* at ¶ 15.

The Plaintiff received his MRI on July 28, 2014. Compl. ¶ 16. The results showed posterior scarring on a joint ligament near the Plaintiff's anterior cruciate ligament (ACL). *Id.* A final report on the results was generated the next day indicating a concern for a possible meniscal tear. *Id.* The Plaintiff continues to experience swelling and chronic pain in his knee to this day. *Id.*

The Plaintiff was not provided with any medication on July 28, 2014, despite his complaint of severe pain. Compl. ¶ 17. He discussed the medical reports with Nurse Shayna G. at MWCI and informed her that he had severe pain in his knee. *Id.* at ¶ 18. However, Nurse Shayna stated in her clinical report that the Plaintiff had no acute distress and did not complain of any pain. *Id.* Approximately one week later, the Plaintiff discussed his MRI results and his referral to an orthopedist for surgery[2] with Barbara LaFrances, another medical official. *Id.* at ¶ 19.

On June 27, 2016, after several back-and-forth with MWCI staff, the Plaintiff filed a grievance because he had not been scheduled for surgery for his knee condition. Compl. ¶ 20. The official who responded to his grievance stated that he was scheduled

---

[2] It is not clear from the complaint when the Plaintiff was given a referral for surgery. He alleges that the URC referred him to an orthopedist for his musculoskeletal issue in his knee on March 7, 2014; Compl. ¶ 9; but there is no mention of an order or recommendation for surgery.

4

for an appointment with a physician. *Id.* at ¶ 21. The Plaintiff appealed the response on July 14, 2016. *Id.* at ¶ 22. The same official told him that he "had nothing to gain" by filing a grievance. *Id.* at ¶ 23.

On July 25, 2016, the Plaintiff sent a written request to medical asking why he had not been by a physician and stating that he was still experiencing pain and swelling in his knee. Compl. ¶ 24. Nurse Gina Burns responded that his physician appointment would be very soon. *Id.*

On July 29, 2016, the Plaintiff received a response to his medical grievance from Dr. Pillai stating that no follow-up orthopedist evaluation was needed, which contradicted his MRI report. Compl. ¶ 25. Dr. Pillai ordered a knee brace for the Plaintiff, but the Plaintiff did not receive the brace until two months later. *Id.* at ¶¶ 25-26.

On August 10, 2017, the Plaintiff offered to return his knee brace because it had expired. Compl. ¶ 27. He told nursing staff that he did not want to get into any trouble for failing to return the brace but that he still needed it because he struggles to keep his balance when walking. *Id.* The nurse stated in her report that she placed the knee brace on Dr. Pillai's shelf to be returned to the Plaintiff if needed after further evaluation, but the Plaintiff was never called back to the medical unit for another evaluation, and the brace was never returned. *Id.*

Six months later, on February 2, 2018, Dr. Pillai ordered another knee brace for the Plaintiff, but the Plaintiff never received it and did not discover that one was ordered until January 31, 2019. Compl. ¶ 28. Medical staff allowed the Plaintiff to go almost a whole year without a knee brace, forcing him to deal with chronic pain and problems walking. *Id.*

5

**Discussion**

Based on these allegations, Plaintiff claims that the Defendants violated his Eighth Amendment protection against cruel and unusual punishment by acting with deliberate indifference to his serious medical needs. He requests damages and injunctive relief in the form of the "previously ordered surgery, physical therapy, and accessories to accommodate [his] condition . . . ." Compl. at p.16.

To state a claim for deliberate indifference to a serious medical need, the Plaintiff must show both that his medical need was serious and that the Defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 105 (1976)). There are both objective and subjective components to a deliberate indifference claim. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim." *Smith*, 316 F.3d at 185 (emphasis in original; internal quotations omitted). Subjectively, the Defendants must have been actually aware of a substantial risk that the Plaintiff would suffer serious harm as a result of their actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006). Allegations of mere negligence or medical malpractice do not rise to the level of deliberate indifference and is not cognizable under § 1983; *see id.* at 280; nor does a

6

difference of opinion regarding what constitutes appropriate treatment or response to a medical condition. *See Ventura v. Sinha*, 379 F. App'x 1, 2–3 (2d Cir. 2010); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

Here, the Plaintiff alleges a sufficiently serious deprivation – the delay in receiving treatment and the gaps in treatment for his knee condition. However, he has not alleged sufficient facts showing that any of the named Defendants, Dr. Naqvi, Dr. Pillai, or Nurse Shayna G., acted with deliberate indifference, i.e. that they were actually aware of and disregarded a substantial risk of serious harm. The only allegation against Dr. Naqvi is that he, perhaps, misdiagnosed the Plaintiff with arthritis. *See* Compl. ¶ 7. According to the Plaintiff, Dr. Naqvi submitted a URC request and, thus, sought further medical treatment on his behalf. *See id.* Similarly, Dr. Pillai twice ordered a knee brace for the Plaintiff to alleviate his pain and/or problems walking. *Id.* at ¶¶ 25-26, 28. To the extent the Plaintiff is grounding his Eighth Amendment claim against Dr. Pillai in his July 29, 2016 determination that a follow-up orthopedic evaluation was not needed, the Plaintiff's claim is simply a difference of opinion over the appropriate medical response to his condition. *See Ventura*, 379 F. App'x at 2–3; *Chance*, 143 F.3d at 703. Finally, the only allegation against Nurse Shayna G. is that she falsely stated in her clinical report that the Plaintiff was not in distress at the time she evaluated him. Compl. ¶ 18. This allegation, alone, does not show that Nurse Shayna G. was deliberately indifferent to the Plaintiff's medical needs. Accordingly, the Plaintiff has failed to state a plausible Eighth Amendment claim for damages against any of the named Defendants.

Moreover, the allegations against Dr. Naqvi and Nurse Shayna G. concern events that occurred in 2014, almost five years prior to the filing of this complaint. Section 1983

claims arising in Connecticut are governed by the three-year limitations period set forth in Connecticut General Statutes § 52-577. *Harnage v. Torres*, 665 F. App'x 82, 83 (2d Cir. 2016); *Lounsbury v. Jeffries*, 25 F.3d 131, 132-34 (2d Cir. 1994). Thus, the claims against Dr. Naqvi and Nurse Shayna G. are time-barred.

**Order**

The complaint is dismissed. The dismissal is without prejudice as to Dr. Pillai. The Plaintiff may file an amended complaint within thirty (30) days from the date of this Order with additional facts sufficient to establish that Dr. Pillai acted with deliberate indifference to his serious medical needs. If no amended complaint is filed within thirty (30) days from the date of this Order, the Court shall dismiss the case with prejudice.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 18th day of March 2019.

_____/s/_____
Kari A. Dooley
United States District Judge